# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

TINA LOUISE MARQUEZ,

      Plaintiff,

v.                                                                   Civ. No. 21-451 KWR/GJF

ANDREW M. SAUL, *Commissioner*
*of the Social Security Administration*,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand with Supporting Memorandum" [ECF 24] ("Motion"). The Motion is fully briefed. *See id.*; ECFs 28 ("Resp."), 35 ("Reply"). Having meticulously reviewed the entire record, and for the reasons articulated below, the Court **RECOMMENDS**[1] the Motion be **DENIED** and this case **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

Plaintiff is a 51-year-old unmarried mother of two grown sons and lives alone. *See, e.g.*, Administrative Record ("AR") at 54. She dropped out of school in the eighth grade but later obtained her general equivalency diploma ("GED"). AR at 318, 752. Prior to 2008, she worked as a telemarketer, leasing agent, accountant clerk, and subscription salesperson. AR at 47–48.

Plaintiff's disability claim traces back to 2008,[2] when a major automobile collision allegedly left her with a traumatic brain injury ("TBI"), cognitive disorders, personality changes,

---

[1] The Court files this Proposed Findings and Recommended Disposition (PFRD) pursuant to the presiding judge's January 9, 2023, Order of Reference.  ECF 40.

[2] The record does not consistently establish whether all of Plaintiff's mental conditions began with the 2008 accident. *See* AR at 318, 518 (Plaintiff's own statement that her depression predated the accident); *id.* at 718 (warning Plaintiff that a prescription medication she began in 2017 "causes a type of clinical depression").

depression, and anxiety.  AR at 22, 24, 49–50.  She asserts that these conditions render her unable to work.  AR at 49–50 (testifying that her short-term memory cripples her capacity to understand or remember simple instructions which invites criticism from her superiors that, in turn, compounds her depression and anxiety).  Plaintiff also maintains that these conditions make her reluctant "to be around people" and that she experiences symptoms of agoraphobia.  Mot. at 1; AR at 20 ("I get really scared when people try to get in my space"), 23 (denying attending any events "for fun" or "get[ting] together with" friends).  Despite these setbacks, Plaintiff managed to obtain her associate's degree five years after the accident.  AR at 16–17.  After obtaining that degree, she found a job answering phones to the company's apparent satisfaction.  *Id.* at 753.  She also held a series of short-lived jobs as a telemarketer, apartment leasing agent, some sort of "[d]ancer" in 2016, and occupied an unspecified role at Dillard's in 2017.  AR at 47–48, 491, 623.

In September 2016, Plaintiff applied to the Social Security Administration ("SSA" or "Commissioner") for disability insurance benefits and supplemental security income.  The SSA approved her supplemental security income claim in June 2017 but denied her disability insurance benefits claim.  *Id.* at 1, 19, 71–85 (denying Plaintiff's claim initially, on reconsideration, and by administrative law judge ("ALJ") Ann Farris after a hearing; Appeals Council also declining to reverse the ALJ's decision).  The ALJ determined that Plaintiff could not perform any of her previous work, but she had the residual functional capacity ("RFC") to perform other jobs existing nationwide in significant numbers.  *Id.* at 28 (listing viable employment as a "[l]aboratory

equipment cleaner," "[h]ospital cleaner," or "[w]all cleaner"). Thus, the ALJ found Plaintiff not disabled as defined by the Social Security Act. *Id.* at 19.

Once the Appeals Council declined to revisit the ALJ's decision, it became "final" agency action ripe for appeal to an Article III court. 20 C.F.R. § 404.984; *accord* 5 U.S.C. § 704.[3] On May 13, 2021, Plaintiff sought review of the Commissioner's decision in this Court. ECF 1.

## II.   STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish her inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA uses a five-step sequential evaluation process. *E.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003) (citing 20 C.F.R. § 416.920). The first four steps require the claimant to show that (1) "[s]he is not presently engaged in substantial gainful activity," (2) "[s]he has a medically severe impairment or combination of impairments," and either (3) the impairment is equivalent to a listed impairment or (4) "the impairment or combination of impairments prevents h[er] from performing h[er] past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2. If the claimant reaches step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient capacity "to perform

---

[3] "[W]hen a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, . . . the decision of the administrative law judge . . . will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."

other work in the national economy in view of h[er] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.  However, the claimant reassumes the burden once [s]he seeks judicial review.  *Id.* at 146 ("An individual shall not be considered . . . disable[d] unless [s]he furnishes such medical and other evidence . . . as the [Commissioner] may require.").

### B.  Substantial Evidence

Judicial review of the ALJ's five-step analysis and ultimate decision is both legal and factual.  *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (internal citations omitted) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").  If the ALJ applied the correct legal standards and supported h[er] findings with substantial evidence, the Commissioner's decision stands.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

In determining whether the ALJ applied the correct legal standards, the Court evaluates whether [s]he "followed the specific rules of law" required for "weighing particular types of evidence in disability cases."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so."  *Hamlin*, 365 F.3d at 1214 (citations and quotations omitted).

The Commissioner's factual findings, on the other hand, are presumed conclusive unless "[un]supported by substantial evidence."  42 U.S.C. § 405(g).  This standard requires "look[ing] to an existing administrative record and ask[ing] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court

has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted).

Under this "substantial evidence" standard, a court cannot convert its meticulous review of the full record into "reweigh[ing of] the evidence nor substitut[ing] [the court's] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Put differently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court [c]ould justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (internal citation and quotation omitted) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

### C. Residual Functional Capacity

The RFC assessment performed by the ALJ "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *8. To make such an assessment, the ALJ must "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," specifically by addressing the claimant's "remaining exertional and nonexertional capacities" to perform work. *Id.* at *2, *15. In addressing the claimant's exertional capacities, the

ALJ must separately consider the claimant's ability to "perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *15. In considering the claimant's nonexertional capacities, the ALJ must assess the claimant's physical abilities that are "not reflected in the seven strength demands," the claimant's mental abilities, and all other "abilities affected by impairments:"

> Nonexertional capacity considers all work-related limitations . . . that do not depend on . . . physical strength . . . . It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

*Id.* at *2, *16-17; 20 C.F.R. § 404.1545(d).

The "failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." SSR 96-8p, 1996 WL 374184, at *10 (emphasis added). "The concern is that, without a function-by-function analysis, an ALJ 'may . . . *overlook* limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (emphasis added) (quoting SSR 96-8p, 1996 WL 374184, at *11).

An ALJ's failure, however, to fully describe a claimant's ability to perform all "the specific work-related functions" is not by itself reversible error—particularly when the ALJ "did not

overlook" the functional limitation complained of and the failure "was not critical to the outcome of the case." *Hendron*, 767 F.3d at 957.

### D.  Medical Opinion Evidence

Properly formulating a claimant's RFC requires that the ALJ consider all relevant medical opinions[4] in the record.  *E.g.*, *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotations omitted).  "[S]he must also discuss the weight [s]he assigns" to each opinion.  *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

Generally, the ALJ must evaluate medical opinions according to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *E.g.*, *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *accord* 20 C.F.R. §§ 404.1527(c), 416.927(c).

When a treating physician[5] formulates a medical opinion, and the claim was filed before March 27, 2017—like the present claim—the ALJ must apply a two-step construct.  First, the ALJ analyzes whether the opinion deserves "controlling weight."  *Watkins*, 350 F.3d at 1300.  The

---

[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *accord* Soc. Sec'y Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2.  Information from "other sources," medical or not, may also "show the severity of an individual's impairment(s) and how it affects the individual's ability to function."  *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *see* SSR 06-03p, 2006 WL 2329939, at *2.

[5] A treating physician is an acceptable medical source who has treated a claimant and maintains an ongoing relationship with her.

opinion presumptively receives such weight unless: (1) it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or (2) it is "[in]consistent with the other substantial evidence from the record." *Id.* (internal quotes omitted).  When either or both of those two conditions exists, and the opinion does not receive controlling weight, the ALJ proceeds to the second phase of analysis: deciding what, if any, weight to assign the opinion, and providing explanatory reasons tied to the *Watkins* factors.  *Krauser*, 638 F.3d at 1330.  The reasons provided must be "good reasons" and written "in [the] notice of determination or decision."  20 C.F.R. § 404.1527(d)(2); *see also* SSR 96–2p, 1996 WL 374188, at *5; *Doyal*, 331 F.3d at 762.  Further, the notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5.

The Tenth Circuit does not require an ALJ to list or apply these six factors expressly or formulaically.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (declining to require ALJs to "apply *expressly* each of the six [*Watkins*] factors in deciding what weight to give a medical opinion").  The decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.*  These reasons are reviewed only for substantial evidence.  *Doyal*, 331 F.3d at 764.

## III.  PLAINTIFF'S CONTENTIONS

Plaintiff's Motion is best understood as two arguments.  First, she asserts the ALJ's decision rests on factual error because, in the process of formulating the RFC, the ALJ failed to "properly" consider Plaintiff's step-two mental impairments and her own statements at the hearing. Mot. at 2, 13–16, 23–27.  Plaintiff argues that the RFC is legally flawed because the ALJ failed to

account for "all [Plaintiff's] limitations" and failed to support the RFC with substantial evidence. *Id.* at 13.   Second, Plaintiff contends that the ALJ did not properly consider medical opinion evidence.   *Id.* at 18–22.   More specifically, she complains that the ALJ failed to provide "the requisite analysis" and failed to support her rejections or partial considerations with findings from the record.   *Id.* at 18.

## IV.   ALJ'S DECISION AND FINDINGS

Having followed the SSA's five-step process and after "careful consideration of all the evidence," the ALJ found that Plaintiff was not "disab[led] within the meaning of the Social Security Act" at all relevant times.[6]   AR at 19; *accord* 20 C.F.R. §§ 404.1520(a), 416.920(a).

### A.   Steps One, Two, and Three

The ALJ began at step one by noting that that Plaintiff's alleged onset date was January 1, 2009, and she was last eligible for disability insurance benefits on September 30, 2014.   AR at 21. Despite Plaintiff engaging in paid work for three separate employers between January 1, 2009, and September 30, 2014, the ALJ found that Plaintiff conducted zero substantial gainful activity between her alleged onset date and her date last insured.   *Id.* (characterizing Plaintiff's three post-accident jobs as "unsuccessful work attempts" because none lasted longer than three months).   At step two, the ALJ found that Plaintiff suffers from the following "severe" impairments: "[TBI] with cognitive disorder and personality change, depression, and anxiety."   *Id.* at 22.   At step three, the ALJ concluded that none of these impairments, alone or in combination, equaled the severity of a "listed" impairment.   *Id.* at 22–24.   The ALJ made this finding only after identifying each listing's requisite medical findings and the record's lack of those necessary facts.   *Id.* at 22–23

---

[6] Because a claimant's eligibility for disability insurance benefits depends on establishing disability on or before the date last insured, the relevant time period for our purposes is January 1, 2009, to September 30, 2014.   AR at 19; *accord* 42 U.S.C. §§ 416(i), 423.

(considering the "paragraph B" criteria, finding one mild mental impairment and three moderate mental impairments based on inconsistent record evidence); *accord* 20 C.F.R. § 404, Subpart P, App'x 1.

The ALJ next moved to the "paragraph B" criteria, which require finding either one "extreme" limitation or two "marked" limitations among four broad areas of functioning: "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." AR at 23. Here, the ALJ found Plaintiff presented three moderate limitations and one mild limitation.

First, the ALJ found Plaintiff moderately limited in her ability to understand, remember, or apply information. The ALJ cited approvingly to neurobehavioral testing suggested decreased cognitive functioning congruent with Plaintiff's self-reported limitations, but the record did not support a cognitive decline as severe as Plaintiff claimed. *Id.* (citing Plaintiff's ability to manage her personal care, care for her younger child, cook meals, shop for groceries, and clean her home).

Second, the ALJ found Plaintiff's capacity to interact with others only "moderate[ly]" limited. *Id.* The ALJ cited Plaintiff's statements and record evidence suggesting she struggled to get along with family, friends, neighbors, and people generally yet also reported regularly spending time with others and demonstrating a "consistently pleasant and cooperative" demeanor with her healthcare providers. *Id.*

Third, the ALJ found that Plaintiff had moderate difficulties concentrating, persisting, or maintaining pace. For support, she noted Plaintiff's hearing testimony about struggling to follow instructions and maintaining a several-minute-long attention span, along with treatment notes suggesting that Plaintiff's attention and concentration are "impaired." *Id.* But the ALJ also highlighted where Plaintiff's statements conflicted with the record—for example, Plaintiff's self-

reported activities of daily living "that require a significant attention and concentration" [sic] and those treatment notes observing Plaintiff's generally "intact memory" elsewhere.  *Id.*

To conclude her paragraph B discussion, the ALJ found that Plaintiff's capacity to adapt and self-manage was, at most, mildly limited.  *Id.*   She referenced Plaintiff's function report, wherein Plaintiff herself acknowledged her capacity to manage most of her daily living activities— and that of her younger son, too—which included grocery shopping and washing clothing, both at home and at a laundromat.  *Id.*[7]

## B.  Step Four

Because none of Plaintiff's impairments satisfied or medically equaled a listed impairment, the ALJ moved to step four and formulated the RFC.  *Id.* at 23–24.  "After careful consideration of the entire record," the ALJ assessed Plaintiff's RFC in pertinent part as:

> [T]he [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple decisions with few workplace changes.  She is limited to no interaction with the public and no production pace or tandem tasks.

*Id.* at 24.  The ALJ anchored this finding to objective medical records, the observations of examining and treating physicians, and her assessment of Plaintiff's self-described symptoms.  *Id.* at 24–28.  These considerations led the ALJ to conclude that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause her alleged symptoms," the record did not support the subjective symptoms that Plaintiff described to the SSA.  *Id.* at 24–27

---

[7] Alongside her paragraph B findings, the ALJ also considered the "paragraph C" criteria.  She concluded that those criteria were inapplicable to Plaintiff, finding that "[Plaintiff's] reported ability to manage her activities of daily living are [sic] not consistent with having a minimal capacity to adapt to changes in her environment or to demands that are not already a part of her daily life."  *Id.*

(finding that Plaintiff's TBI and cognitive functioning were medically recognizable, but the record did not support Plaintiff's self-reported symptom severity consistently enough).

Like the ALJ did, the Court next turns to a review of those claims and the portions of the record relevant to them.

       1.   Cognitive Disorder Due to TBI

At the hearing, Plaintiff claimed that she "ha[s] a hard time retaining memory." *Id.* at 50. She described an inability to "understand, remember, or apply information correctly," which causes mistakes that typically lead to her termination. *E.g.*, Mot. at 14; *see also* AR at 50 (insisting that, when given instructions, she would not remember her obligations, how to fulfill them, or understand her instructions). She explained that "nothing [would] st[i]ck" in her college-level math and accounting courses and that she could not follow instructions or pay attention for more than several minutes at a time. AR at 23, 51, 53. The ALJ cited portions of the record that somewhat supported these assertions. *See, e.g.*, *id.* at 25 (clinical examination findings suggesting Plaintiff suffers "significant cognitive defects" in 2009 following her car accident (citing *id.* at 317–22)).

The ALJ pointed to other portions of the record, however, which contradicted Plaintiff's asserted symptom severity. *See id.* at 25 (noting Plaintiff's "improved mental functioning" given three years of objective medical records observing that Plaintiff's recent memory, remote memory, attention, and concentration remained "[i]ntact" (citing *id.* at 427–524)); *see also id.* at 23 (documenting six years of cognitive improvement and relatively unremarkable "[m]ental status exam" results (citing *id.* at 553–762)). The ALJ cited to Plaintiff's self-completed daily functionality report and her successful completion of an associate's degree. *Id.* at 26; *see also id.*

at 23 (observing that Plaintiff's self-reported daily activities like cleaning and cooking "require a significant attention and concentration" that belied her self-assessed symptom severity).

The ALJ also separately reviewed the record's four relevant medical opinions. In doing so, she noted whether the opinion came from an examining or treating physician, the weight she gave each opinion, and why she gave the weight she assigned. *E.g.*, *id.* at 26–27; *accord Watkins*, 350 F.3d at 1300 (requiring no more than an articulated, legitimate, and reasoned explanation of the weight, if any, given to a treating physician's opinion). As described below, the ALJ's review of relevant medical opinions did not reconcile or resolve the inconsistencies she found between the record and Plaintiff's self-reported symptoms.

Beginning with the examining physicians, the ALJ gave "little" weight to the state agency psychological examiners that initially considered Plaintiff's Title II claim. AR at 26. Unlike them, the ALJ found sufficient pre-2014 record evidence of TBI and cognitive disorder and accorded less weight to the agency for concluding otherwise. *Id.* The ALJ gave "some" weight to the consultants assigned to Plaintiff's Title XVI claim, which found "moderate" limitations in all paragraph B criteria except for "concentration, persistence, or pace, which received a "marked" limitation. *Id.* (finding this opinion "mostly supported" but for Plaintiff's own statements at the hearing, her self-assessed function report, and objective records such as her college degree, which collectively suggested intact memory). The ALJ also considered the 2009 opinion of Dr. Betsy Williams, to which the ALJ assigned "some" weight. *Id.* at 27 (opining that Plaintiff could continue to satisfactorily perform at an "over-learned" task with adequate support but finding a lack of requisite detail in analyzing Plaintiff's functional capacity).

The ALJ next turned to the three treating physician opinions. The ALJ assigned "little" weight to the 2016 opinion of licensed independent social worker ("LISW") Christine Garcia

because she rendered her opinion based on Plaintiff's condition as of 2016—"well after the date last insured." *Id.* at 27. Noting the same attenuation problem, the ALJ gave equally "little" weight to Dr. Jill Ryan's 2016 opinion. *Id.* Finally, the ALJ accorded "little" weight to Dr. Edwin Hall's opinions because not only had Dr. Hall's license "been revoked," but he also "appears to rely [entirely] on subjective statements." *Id.*; *see also id.* at 523 (acknowledging that Plaintiff "was a source of information used to complete the history documented" without indicating *any other sources*).

### 2. Personality Change Due to TBI

At the hearing, Plaintiff also reported multiple changes to her personality that she allegedly began noticing following her 2008 car accident: depression, anxiety, intolerance for social interaction, frustration (when her supervisors asked about mistakes made at work), and having no friends. *Id.* at 49–55, 57. As the ALJ duly noted, the record somewhat supported these symptoms. *E.g.*, *id.* at 23 (acknowledging Plaintiff's testimony that she struggled to coexist with friends, family, neighbors, and authority figures). But the record did not consistently support how severe Plaintiff claimed her symptoms are. *See, e.g.*, *id.* at 23 (noting that Plaintiff consistently behaved pleasantly and cooperatively with her treating physicians). Indeed, the record starkly contrasts with the barren social calendar that Plaintiff described. *See id.* at 351–52, 400, 468 (anticipating her "airline flight, [to] go[ ] on vacation . . . with [her] new boyfriend"), 482 (reporting "no stress . . . in the following areas: family, friends, relationship, educational, economic, occupational, housing, legal, and health"), 545 (attending fitness classes four to five times per week at a

14

commercial gym), 566 (dating someone monogamously), 614 ("changing her weight[-]lifting routine"), 623 (working as a "[d]ancer").

### C.  Step Five

At step five, the ALJ developed the record by questioning the vocational expert ("VE"). The VE testified that a hypothetical person with Plaintiff's RFC could not perform Plaintiff's past occupations but could perform the following representative jobs: "[l]aboratory equipment cleaner" (49,000 jobs in the national economy), "[h]ospital cleaner" (40,000 jobs in the national economy), or "[w]all cleaner" (16,000 jobs in the national economy). *Id.* at 28. The ALJ found this testimony consistent with the Dictionary of Occupational Titles, thereby supporting the conclusion that Plaintiff can perform other jobs existing in the national economy in significant numbers. *Id.* at 28–29. Thus, she found Plaintiff not disabled within the meaning of the Social Security Act. *Id.*

## V.   DISCUSSION

Plaintiff argues that the ALJ "failed to properly evaluate" the RFC. *See* Mot. at 2, 13–18, 23–25. Plaintiff takes particular issue with the ALJ's findings on her mental conditions, hearing testimony, and the assumption that her ability to perform work equates to her ability to maintain that level of functioning. *Id.* at 11–14. Separately, Plaintiff contends that the ALJ rejected relevant medical opinion evidence without following the mandatory and prescribed analytical steps. *Id.* at 18–23. She insists that both alleged errors were harmful enough to justify reversal and remand.

### A.  The ALJ Properly Formulated the RFC

Plaintiff's criticism of the RFC follows an increasingly familiar pattern that the Court has rejected on multiple prior occasions.[8] The pattern usually follows a sequence like: (1) emphasize

---

[8] This Court has rejected the same argument at least five times before. *See* Motion to Remand to Agency for Rehearing with Supporting Memorandum at 11–14, *Leedy v. SSA* (Civ. No. 16-224); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 5–12, *Franco v. SSA* (Civ. No. 17-821); Motion to Remand to Agency for Rehearing with Supporting Memorandum at 8–12, *Lucero v. SSA* (Civ. No. 18-701); Corrected Motion to Remand to Agency for

that the ALJ must consider the *entire* record; (2) assert that the ALJ's RFC failed to "*properly*

consider" or "account for" some alleged condition or limitation; (3) cite nothing to clarify what

"proper" consideration entails; (4) insist the RFC contains "nothing" to account for said limitation

or condition; (5) ignore the RFC's limitations and neglect to explain why those limitations do not

account for said limitation or condition; and (6) selectively cite only to the parts of the record that

favor Plaintiff.  *See, e.g.*, Mot. at 13–14 (implying that, although the ALJ referenced the record in

making her findings, those findings lack adequate support because the reasons cited are not

convincing enough).

The instant Motion is little different.  Here, Plaintiff argues that the ALJ failed to "properly

consider" the RFC because, essentially, Plaintiff disagrees with how much weight the ALJ gave

Plaintiff's preferred parts of the record.  *See id.* at 13–18 (stressing that the ALJ must conduct a

*comprehensive* record review yet premising legal error based on handpicked record excerpts).  The

only discernable interpretation of this first argument is that the RFC lacks support from substantial

evidence.  This argument, however, fundamentally collides with the applicable standard of review.

It (1) identifies a factual inconsistency that the ALJ resolved and, despite glossing over the

presence of facially relevant evidence that goes both ways, (2) challenges the persuasiveness of

the evidentiary support behind the ALJ's decision.

At a conceptual level, binding precedent forbids this Court from disturbing SSA decisions

based on such a rationale.  When the record poses a factual inconsistency, and the ALJ resolves

that conflict, the "substantial evidence" standard demands deference to the fact finder's choice and

forbids re-weighing the evidence underlying that choice—unless, of course, the ALJ relied solely

---

Rehearing with Supporting Memorandum at 7–12, *Young v. SSA* (Civ. No. 19-220); Motion to Remand for Rehearing
with Supporting Memorandum at 13–27, *Munoz v. SSA* (Civ. No. 20-245).  And this Court is not alone in disagreeing
with Plaintiff's counsel on this point.  *See, e.g.*, Order by Magistrate Judge Jerry H. Ritter denying [ECF 22] Motion
to Remand, *Martinez v. SSA* (Civ. No. 21-118).

on evidence that no reasonable mind could "accept as adequate to support a conclusion." *See, e.g.*, *Biestek*, 139 S. Ct. at 1154; *accord* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b). Thus, this Court can consider evidence only insofar as it is or is not relevant. But Plaintiff does not (and likely could not) credibly dispute the relevancy of the ALJ's cited facts. She attempts instead to disguise her factual arguments as arguments alleging legal error—a litigation ploy the Court cannot permit.

Guided by its prior decisions addressing the same argument, the Court will reject it one more time.

## B. Substantial Evidence Supported the RFC Findings

### 1. Plaintiff's Non-Exertional Limitations

An ALJ must evaluate a claimant's RFC by considering all relevant evidence, including medical records, the observations of treating physicians, and the claimant's self-reported limitations. 20 C.F.R. § 404.1545. The ALJ's consideration of such evidence, however, applies only to *credible* impairments supported by *substantial* evidence. *See generally* SSR 96-8p. The rote allegation of a fact, symptom, or condition, by itself and without objective support, is not dispositive. Moreover, the ALJ "need not engage in a formalistic factor-by-factor recitation of the evidence when evaluating the functional effects of a claimant's subjective symptoms," nor do the regulations require the ALJ to "discuss every factor listed . . . ; they expressly provide that she *does not* need to do so." *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 721 (10th Cir. 2021) (unpublished) (emphasis added) (quotations omitted) (citing SSR 16-3p); *cf. Endriss v. Astrue*, 506 F. App'x 772, 775–76 (10th Cir. 2012) (unpublished) (holding that an ALJ's decision may be read "as a whole"). "And when an 'ALJ indicates she has considered all the evidence,'" the

practice in the Tenth Circuit is "'to take the ALJ at her word." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (internal quotation and alterations omitted).

Plaintiff claims that "[t]here is *nothing* in the RFC to account for deficits in understanding, remembering[,] or applying information." Mot. at 14 (emphasis added). Yet, she somehow simultaneously recognizes that the RFC did, in fact, account for non-exertional, i.e., mental, limitations. Mot. at 14 ("simple decisions, few changes, no public, no production pace, and no tandem tasks"); *accord* AR at 24. Although the Court will put aside what, at first blush, resembles a distortion of the record, the Court observes that Plaintiff does not explain *how*[9] the RFC's non-exertional accommodations fail to account for her alleged mental limitations. Instead, she argues the ALJ committed reversible legal error by failing to "discuss how limiting [Plaintiff] to simple decisions accounted for [her] moderate limitation." Mot. at 15 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2007) (declaring "simple work" is too "vague" to adequately account for a mental limitation)); *but see* AR at 24 (limiting Plaintiff to "simple ***decisions***," not "simple ***work***" (emphasis added)); *Chapo*, 682 F.3d at 1291 (noting that, unlike here, the mental limitation was supported by *uncontroverted* findings). Contrary to Plaintiff's threadbare assertion, *Chapo* does not justify reversal merely because the ALJ did not clarify the obvious—how a limitation to simple decisions would accommodate "moderate" limitations in understanding, remembering, or applying information. "The record must demonstrate that the ALJ considered all of the evidence, but an

---

[9] Plaintiff does little to refute the natural inference that the RFC accounts for these "moderate" limitations. For example, if someone's capacity to understand information is moderately limited, only allowing work that requires simple decisions and excludes interacting with the public could accommodate that limitation. Similarly, someone exhibiting moderate limitations in her capacity to remember or apply information would be appropriately accommodated by only working jobs where the work environment seldom changes, does not require rigorous pace, and does not require multitasking. Plaintiff's argument to the contrary leaves the Court unpersuaded.

ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79F.3d 1007, 1009–10 (10th Cir. 1996) (internal citations omitted).

Plaintiff next criticizes the ALJ's treatment of the other three "paragraph B" subcategories, but these equally boilerplate arguments fail for the same reasons. *See, e.g.*, Mot. at 15–17 (submitting a conclusory assertion, the minutiae of Plaintiff's medical record, and tangentially relevant definitions in an attempt to invite this Court into reweighing the evidence); *see also id.* at 17–18 (attempting to argue that the ALJ was required to account for Plaintiff's alleged headaches; *but see* Resp. at 10 n.3 (citing considerable evidence that Plaintiff did ***not*** suffer from headaches during the relevant time period).[10]

### 2. Plaintiff's Statements

Plaintiff next argues that the ALJ did not properly consider her statements. Mot. at 23–24. She appears to assert that objective medical evidence cannot—or, at least, should not—outweigh subjective complaints made by a claimant. *Id.* at 23–25. But the record reveals that the ALJ reiterated Plaintiff's symptoms and limitations as she described them in her application and hearing. AR at 25–26. Indeed, the ALJ contrasted those subjective statements with objective medical evidence and opinions of various physicians. *Id.* That discussion itself demonstrates that the ALJ knew of and considered Plaintiff's statements but, in the ALJ's view, other evidence called

---

[10] The Court need not further entertain these perfunctory arguments. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (internal quotation marks omitted)); D.N.M.LR-CIV 7.3.(a) (requiring "[a] motion, response or reply" to "cite authority in support of the legal positions advanced").

Plaintiff's statements into question.  Plaintiff's assertions to the contrary are inconsistent with the record.  *E.g.*, *id.*; *but see* AR at 26.

To the extent Plaintiff's argument could be understood to attack the ALJ's factual conclusion regarding Plaintiff's self-assessed symptom severity, such a position would be unpersuasive.  The ALJ identified facially valid facts to support her position notwithstanding Plaintiff's attempts to discredit those facts.  *See, e.g.*, AR at 26 (acknowledging the factual inconsistency and concluding that "[t]hese inconsistencies render the claimant's allegations less persuasive.").  ALJs are permitted to make a finding of non-disability after weighing the probative evidence on both sides of the issue and concluding that the evidence of non-disability is simply more persuasive.  To require otherwise would force the Commissioner to make a finding of disability whenever substantial evidence existed to support such a finding.  SSR 16-3p does not call for that.

In sum, the record belies Plaintiff's arguments.  The ALJ properly considered and—within her discretion, after noting the contradictions—rejected the severe subjective symptoms of which Plaintiff complained.  She did so with reference to objective medical evidence and relevant medical opinions.  Given the evidentiary conflict, the ALJ exercised her discretion to weigh the evidence, and the Court is mindful that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001).  This was not error.

### 3.  Sustainability

Plaintiff next asserts that the ALJ failed to discuss whether Plaintiff could not only perform the work activity found at step five, but also "whether [she] could sustain [it]."  Mot. at 25–26.  In support, she points out that the record does not contain specific findings that Plaintiff "can sustain

that level of work[ ] or hold the job for a significant period of time." *Id.* at 26; *see also id.* at 27

(citing *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994)). But unlike *Washington*,

where the record actually included treating physician opinions regarding a claimant's inability to

sustain work activity, the record here contains no such evidence. *See Washington*, 37 F.3d at 1441.

At most, the record contains Plaintiff's statements which, as the previous two subsections have

established, the ALJ properly distinguished with support from the record.

Further, the law does not support reversal for failing to fully describe the ability to perform

all "specific work-related functions." *Hendron*, 767 F.3d at 957. Indeed, the Tenth Circuit has

expressly rejected treating such an omission as reversible error by itself—particularly when, as

here, the ALJ "did not overlook" the functional limitation complained of, and the failure "was not

critical to the outcome of the case." *Id.* (holding that an ALJ's failure to "find explicitly that

[claimant] was capable of sitting for six hours during a regular eight-hour work day" was not

reversible error because the ALJ nevertheless "did not overlook [claimant's] problems with

sitting" and because a failure to make such an explicit finding "was not critical to the outcome of

[the] case."). Indeed, in analyzing such "technical omissions in [an] ALJ's reasoning," courts must

"exercise common sense." *Id.* Employing its common sense here, the Court finds no error in the

ALJ's analysis.

### C. The ALJ Properly Assessed the Medical Opinion Evidence

As detailed above, the ALJ must consider each opinion, assign it a degree of weight, and

explain her reasoning, and that reasoning must generally conform with at least some of the six

*Watkins* factors. Here, the record indicates that the ALJ expressly discussed each medical opinion,

assigned it a particular degree of persuasiveness, and explained her reasons behind the chosen

weight. AR at 26–27. Nevertheless, Plaintiff questions the ALJ's treatment of these opinions,

effectively arguing that the ALJ relied on less-than-persuasive reasons, and she accuses the ALJ of "disingenuously" citing the record.  Mot. at 20.  But a review of the record reveals these accusations to be meritless.

Plaintiff insinuates that the ALJ's resolution of factual inconsistencies should have come out the other way.  *See, e.g.*, Mot. at 20 (recapitulating the record).  But in doing so, Plaintiff defeats her own argument because she identifies facially valid facts on both sides of the issue, which triggers this Court's deference.  *E.g.*, *id.* (noting that the ALJ cited "information that *supported* her rejection" of medical opinion evidence and also that arguably "probative evidence support[ed] [Plaintiff's] claim" too (emphasis added)).  Although Plaintiff may be right that the ALJ did not cite the strongest evidence, ALJs are free to consider all evidence, and it is not this Court's role to reweigh that evidence.  *E.g.*, *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  Far from reversible error, this was a standard and permissible application of the ALJ's discretion.

Plaintiff's remaining arguments rely on a misapprehension of the record.  For example, she believes that the 2016 medical opinions of LISW Garcia and Dr. Ryan assessed Plaintiff's condition during the relevant time period, 2009 to 2014, despite being administered in late 2016.  Mot. at 22.  The Court sees it differently.  Dr. Ryan's evaluation report refers to Plaintiff's alleged conditions during the relevant time period in the "[b]ackground [s]ection" of her report, and the only conclusion she reaches even remotely related to Plaintiff's 2009 condition is that, ***relative to 2016***, Plaintiff's condition has worsened.  AR at 541–50; *see also id.* at 547 (citing the 2009 opinion only once for the limited purpose of cross-referencing an intelligence test's results, but otherwise relying on testing conducted in 2016 or data not "independently verified").  Dr. Ryan's

opinions on Plaintiff's 2009 condition are relative, meaning their only purpose is to illustrate the occurrence of decline from then to now—***not*** to assess her past state.

LISW Garcia's opinion suffers the same flaw: her opinion was rendered in 2016, assessing Plaintiff after the relevant time period, and does not directly assess her previous condition. LISW Garcia's reference to Plaintiff's treatment history from 2009 to 2011 does not actually address her functionality but, instead, merely recaps the information akin to Dr. Ryan's background section. AR at 538 ("*Currently*, [Plaintiff] continues to struggle with depressive symptoms and her anxiety." (emphasis added)). Presented with this ambiguity, the ALJ was entitled to consider "the degree to which the medical source presents and explains evidence to support a medical opinion" and, within her discretion, concluded that LISW Garcia's opinion was too ambiguous to support conclusions about Plaintiff's condition circa 2009. *Watkins*, 350 F.3d at 1301. This analysis comports with the required legal framework.

Lastly, Plaintiff asserts that the ALJ mistreated the medical opinion of Dr. Hall. Mot. at 21–22. Plaintiff's reasoning is simple: psychology depends, in part, on a patient's subjective statements, so the ALJ was wrong to discount Dr. Hall's opinion merely because he relied exclusively on Plaintiff's self-reported symptoms. The nature of psychology aside, however, the ALJ is expressly permitted to afford less deference to medical opinions that "simply recite [a claimant's] complaints," especially when "inconsistent with other medical evidence in the record." *Raymond*, 621 F.3d at 1272. *Watkins* encourages consideration of "the kind of examination or testing performed" (or not performed) and "the degree to which the physician's opinion is supported by *relevant* evidence." *Watkins*, 350 F.3d at 1301 (emphasis added). Dr. Hall's opinion says nothing about conducting his own tests for these conditions. Thus, the ALJ applied the

appropriate standards and relied on "substantial evidence" in discounting parts of Dr. Hall's opinion.

In sum, the ALJ did in fact support her RFC with reference to the record; Plaintiff merely objects to the result.   The ALJ's analysis of medical opinions complied with *Watkins* notwithstanding Plaintiff's claims to the contrary.   This Court's role is not to reweigh the evidence or overturn the SSA's decision merely because it is unfavorable.   "Given the presence of substantial . . . evidence in the record to support the ALJ's finding, [this Court is] *unable* to disturb it."  *Raymond*, 621 F.3d at 1272 (emphasis added).

## VI.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.